UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MILAGROS CRUZ,                                      :

               Plaintiff,                    :          04 Civ. 9011 (GWG)

    -v.-                                        :          **OPINION AND ORDER**

JO ANNE B. BARNHART, Commissioner of         :
Social Security,
                             :
               Defendant.
-------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Plaintiff Milagros Cruz brings this action pursuant to 42 U.S.C. § 405(g) to obtain

judicial review of the final decision of the Commissioner of Social Security denying her claim

for supplemental security income and disability insurance benefits.  The parties have consented

to this matter being determined by a United States Magistrate Judge pursuant to 28 U.S.C.

§ 636(c).  The Commissioner has moved for judgment on the pleadings pursuant to Fed. R. Civ.

P. 12(c), and Cruz has cross-moved for judgment on the pleadings.  For the reasons stated below,

the Commissioner's motion is granted and Cruz's motion is denied.

I.  <u>BACKGROUND</u>

      A.  <u>Cruz's Claim for Benefits and Procedural History</u>

      Cruz filed an application for Supplemental Security Income ("SSI") on April 19, 2002,

which was denied on July 3, 2002, the date on which she filed for disability insurance benefits

("DIB").  R. 46, 47-50, 56-58.[1]  Cruz had quit her job as an assistant teacher on April 17, 2002,

for reasons she attributed to "back spasms, plantar spur on right foot, chronic sinusites [sic],

---

[1] "R." refers to the page numbers of the administrative record, which is annexed to the
Commissioner's Answer, filed June 28, 2005 (Docket #10).

lower back pain," asthma, and possible cervical cancer.  See R. 73.  On her application for

benefits, she asserted that her conditions "have limited my ability to perform my duties as an

assistant teacher and to ambulate and do other physical activities."  R. 73.

Following the denial of her application for disability insurance benefits, Cruz requested a

hearing before an Administrative Law Judge ("ALJ") on July 15, 2002.  R. 51-52.  On

September 19, 2003, Cruz appeared without counsel at a hearing before ALJ Kenneth G. Levin.

R. 24-45.  Also testifying at the hearing were Dr. Harlan Mellk, a medical expert, and Mark

Ramnath, a vocational expert.  Id.  In a decision issued October 7, 2003, the ALJ found that Cruz

was not disabled within the meaning of the Social Security Act.  See R. 8-18.  On August 18,

2004, the Commissioner's decision became final when the Appeals Council denied Cruz's

request for review of the ALJ's decision.  See R. 4-6.

Cruz filed the instant action on November 16, 2004.  See Complaint, dated Oct. 13, 2004

(Docket #2).  On August 5, 2005, the Commissioner moved for judgment on the pleadings.  See

Defendant's Memorandum of Law in Support of Her Motion for Judgment on the Pleadings,

filed Aug. 5, 2005 (Docket #13).  Cruz cross-moved for judgment on the pleadings.  See

Plaintiff's Memorandum of Law in Opposition to the Defendant's Motion for Judgment on the

Pleadings and in Support of Plaintiff's Cross-Motion for Remand, dated Nov. 7, 2005 (Docket

#17) ("Pl. Mem.").  The Commissioner filed a reply memorandum on November 21, 2005.  See

Defendant's Reply Memorandum, dated Nov. 21, 2005 (Docket #18).

B.  Evidence Presented Before the ALJ

1.  Cruz's Testimony

Cruz was born on February 1, 1971.  R. 56.  She is 5'4" tall and weighs about 240

pounds.  R. 28.  She completed two years of college and earned an associate's degree in "early

childhood."  R. 29, 79.  Her most recent work was as an assistant teacher at a YMCA preschool,

a job she held for two years.  R. 30.  In this job, she "would help the teacher with whatever was

necessary in the classroom," which included cleaning the tables, sweeping the floors, and

helping to set up toys and playthings for the children.  R. 30.  Over the previous fifteen years,

Cruz had worked as a part-time after-school counselor, an assistant teacher with Americorps, a

summer counselor, an office aide, and a salesperson.  R. 31-32, 74.  As an after-school

counselor, she helped children with their homework, played games with them, and prepared

lesson plans.  R. 31.

    With regard to her physical complaints, Cruz testified that while she had seen several

doctors for her back pain, "[t]hey didn't . . . take it seriously," and would "say that I'm heavy

and that's probably why my back [hurt]."  R. 34-35.  At the time of the hearing, she was taking

Tylenol for her back pain; she stated that she was allergic to "aspirin or anything like that."  R.

35.

    Cruz testified that her diabetes makes her thirsty, "real tired," and causes frequent

urination.  R. 35.  She stated that her diabetic diet requires her to keep her sugar and fat intake

low, and that she follows this diet "for the most part."  R. 36.

    Cruz testified that her most recent asthma attack was two months before the hearing, and

the previous one was six months before that.  R. 36.  She stated that she sometimes went to the

emergency room at Gouverneur Hospital, but that she "wouldn't go often because [she] didn't

have any medical insurance."  R. 37.

Cruz testified that she can walk for 20 to 30 minutes, stand for "about an hour, half hour," and sit for "about an hour." R. 37. Beyond that, she says, her back starts hurting and she has to move around. R. 37. She stated she can lift "maybe ten pounds," and that she helps take care of her sister's toddler and goes shopping with her mother. R. 38. She walks 20 minutes to and from church every Sunday, attending services that last 2½ hours. R. 39. Other than walking, she gets no exercise. R. 40.

When asked by the ALJ why she was unable to work, Cruz replied as follows:

A: Well, I have a lot of back pain. And I was recently told that it's because I have blood in my urine and I have problems with my kidneys now. That's lately, but I've always had the back pain. I didn't know what it was about, but now I know. I have diabetes II, and now – when you have that, you need to be – always the doctor needs to see you. You need to be in treatment, and you can't be – if you're an assistant teacher, you can't be absent. They always want you to be there, and you have to have – you know, you have to –

R. 33. When the ALJ inquired "Don't you think that people who have diabetes work?" Cruz responded "I understand that. I know that they work, but it's not – that's not the only thing I have. I have asthma as well." Id.

2. Dr. Mellk's Testimony

Dr. Mellk, a medical expert, testified at the hearing that Cruz has diabetes mellitus type II, asthma, sinusitis, plantar fasciitis (commonly known as a "heel spur"), and "complaints of back pain." R. 40-41. He was not aware that she had sought any treatment for the back pain in the two years preceding the hearing. R. 40. Dr. Mellk also noted that Cruz "may have a very

slight dextro-scoliosis"[2] which might account for the back pain, but that "there really was no significant . . . findings of muscle spasms and the like." R. 40-41.

Upon questioning by the ALJ about problems with Cruz's kidneys, Dr. Mellk stated that Cruz has proteinurea[3] that "may well be 30 milligrams per DL." He added that "it certainly may be related to her diabetes," but that it was not causing her back pain. R. 41. He also noted that Cruz had had a urinary tract infection the previous February. R. 41. Her asthma, Dr. Mellk stated, was "intermittent," and there is "no evidence that she's had multiple episodes." R. 42.

Finally, Dr. Mellk opined that Cruz's residual functional capacity would permit her to continue doing the work she had been doing most recently, and that she "actually could do more than that . . . based upon her habitus and physical status." R. 42. Specifically, he stated that she was capable of "certainly light [work] and possibly even . . . medium."[4] R. 42. The only restriction he suggested was "significant air pollution," which might aggravate her asthma. R. 42.

---

[2]"Dextro-scoliosis" refers to an abnormal curvature of the vertebral column. See Stedman's Medical Dictionary 1606 (27th ed. 2000) ("Stedman's").

[3]"Proteinurea" refers to the presence of abnormally elevated urinary protein. See Stedman's at 1463.

[4]The regulations define "light work" as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . ." "Medium work" is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 416.967(b), (c); 404.1567(b), (c).

### 3. Mr. Ramnath's Testimony

Mr. Ramnath, a vocational expert, testified that there were jobs in the economy that would permit Cruz to remain sedentary and would not expose her to environmental irritants. See R. 43-44. For example, he noted the following jobs: surveillance system monitor, of which there were approximately 5,000 local positions and 150,000 nationwide; document preparer, 4,000 local positions and 140,000 nationwide; and ticket checker, 5,000 local positions and 180,000 nationwide. R. 44.

### C. Records Relating to Cruz's Medical Conditions

#### 1. Dr. Lau

Cruz first saw Dr. On Hin Lau on November 30, 2001. R. 130. Two days earlier, she had undergone x-rays for her lower back pain. R. 113. The x-rays revealed a "shallow dextrocurvature" of her lumbosacral spine and "muscle spasm," but were otherwise "unremarkable." R. 113. X-rays of her right ankle showed a "large plantar spur" along with "mild symmetric bimalleolar soft tissue swelling and a mild joint effusion." R. 113.

Dr. Lau's notes indicate that Cruz was newly diagnosed with diabetes mellitus and that they had discussed weight loss. R. 130. Dr. Lau referred Cruz to a dietician and an orthopedist. R. 130.

Cruz next saw Dr. Lau on February 9, 2002, during which she reported a clogged nose with a discharge and asthma that was "ok." R. 130. When she returned on February 16, her

sinus condition had improved,[5] but her diabetes was "uncontrolled." R. 131. Dr. Lau referred her to a dietician and ophthalmologist. R. 131.

On February 23, Dr. Lau noted that Cruz "feels better," that she was not hypoglycemic, and that her sinus condition was better. R. 131.

Cruz's final visit to Dr. Lau was on April 13, 2002, at which time Dr. Lau diagnosed diabetes, asthma, allergic rhinitis, chronic sinusitis, and lower back pain. R. 132. Dr. Lau increased the dosage of Cruz's diabetes medication and prescribed two new medications – Allegra and Rhinocort – to treat her rhinitis. R. 132. He also referred her to an ear, nose, and throat specialist and an orthopedist. R. 132. On the same date, Dr. Lau wrote a handwritten note stating that Cruz's "back pain and asthma have markedly limited her ability to ambulate or other physical activities [sic]. At present she does not feel well for daily work." R. 114.

On April 19, 2002, Dr. Lau told Cruz over the phone that blood tests showed her diabetes was not well controlled. R. 132. He advised her to continue her medications and to see the specialists to whom he had referred her. R. 132.

On May 19, 2002, Dr. Lau completed a medical report for Cruz. R. 115-19. In it, he diagnosed her with asthma, diabetes, lower back pain, obesity, and sinusitis. He described her current symptoms as back pain and feet pain. R. 115. Dr. Lau completed a form reflecting that, in his opinion, Cruz could lift or carry a maximum of five pounds, stand or walk for up to two hours daily, and sit for less than six hours daily. R. 117-18. He added that she needed to be

---

[5]On February 20, 2002, however, a CT scan of Cruz's sinuses revealed "chronic pans sinusitis." R. 136-37.

evaluated by an orthopedist, an allergist, a dietician, and an ear, nose, and throat specialist.  R. 118.

### 2. Dr. Mroczek

On December 11, 2001, Cruz visited Dr. Kenneth Mroczek for an evaluation of her right foot and ankle.  R. 120.  X-rays of the foot revealed a calcaneal (heel) spur.  R. 120.  Dr. Mroczek prescribed physical therapy and heel cups, and gave Cruz a prescription for a night splint to use if her symptoms continued more than six weeks.  R. 120.  Dr. Mroczek told Cruz to return if her symptoms lasted for two to three months, but she did not return to him.  R. 75.

### 3. Dr. Balinberg

On May 31, 2002, Dr. E. B. Balinberg performed a consultative examination of Cruz.  R. 122-24.  Dr. Balinberg noted that Cruz presented with complaints of back pain, diabetes, and asthma.  R. 122.  He found her blood pressure and pulse to be normal, as well as her station and gait, but noted "some difficulty to get off the table."  R. 122-23.  Cruz had full use of both hands and arms in dressing and undressing, and her finger/hand dexterity was intact.  All her joints had a full range of motion except her lumbar spine, which had a flexion of 60-65 degrees, with a lateral flexion of 5-10 degrees.  R. 123.  He noted that "she is very sensitive to pressure over the plantar aspect of the left foot," but that the "rest of the musculoskeletal system [was] within normal limits."  R. 123.  Dr. Balinberg diagnosed Cruz with "spinal disorder," "diabetes mellitus," and "calcaneal spur," and recommended that she follow up with her treating source.  R. 123.

Finally, with regard to Cruz's functional capacity, Dr. Balinberg estimated that she had "some restriction in her ability to perform frequent bending, to lift, to carry, to push and to pull

heavy loads, to stand up long periods of time, without interruption." R. 124. He noted a "[c]orrelation between history, symptoms and physical findings." He stated that she should avoid respiratory irritants like "dust, chemicals and fumes" due to her history of asthma. R. 124.

### 4. Gynecological and Other Medical Records

On February 13, 2002, Cruz had a routine pap smear that suggested vaginal infection, and she was given medication to treat it. R. 109-10.

On December 12, 2002, Cruz underwent a routine gynecological exam at Gouverneur Diagnostic & Treatment Center ("GDTC"), during which an endocervical smear was performed that was negative for malignancy. R. 144-45. Cruz was referred for a comprehensive exam due to an underarm abscess and a report that she felt cold. R. 144. She was diagnosed with a cyst and given medication to treat it. R. 149.

At a follow-up office visit on February 26 she had no complaints. R. 152. Following gynecological visits at GDTC on March 4, 5, and 11, 2003, Cruz was diagnosed with vulvitis, tested positive for herpes simplex virus, and tested negative for HIV. R. 153-54.

On April 24, 2003, Cruz underwent a comprehensive physical exam. R. 160-64. The examining physician's assessment was asthma, and Cruz was advised to continue taking her medications. R. 161.

### D. The ALJ's Decision

On October 7, 2003, the ALJ issued a decision denying Cruz benefits. R. 11-18. Specifically, the ALJ found that Cruz was "not 'disabled' within the meaning of the Social Security Act." R. 13. He thus denied her requests for both SSI and DIB. R. 18.

The ALJ noted that Cruz presented the following symptoms: low back pain, diabetes, and asthma. R. 13. He stated that she took Tylenol for her pain, because she claimed to be allergic to other types of medication. R. 13. He noted that she could walk for 20-30 minutes (and that she had walked the half-mile to the hearing), could stand for one-half to one hour, could sit for one to two hours, and could lift or carry about ten pounds. R. 13. The ALJ further noted Cruz's height and weight, and indicated that she was "obese." R. 13, 11.

With regard to her employment, the ALJ cited her associate's degree and her recent work as a teacher's aide, and noted that she had stopped "because of the 'stress' of being diagnosed with diabetes, suffering from asthma and low back pain, and being told she had a positive Pap smear that might indicate cancer (though ultimately it did not)." R. 14. He also discussed her daily activities, which consisted of helping her mother shop and taking care of her sister's baby. R. 14.

The ALJ noted the reports of Dr. Lau, adding that his records did not indicate that Cruz had complained of or been treated for any back condition in the last several months he saw her. See R. 14. During her subsequent visits to GDTC, she was not treated for any back problems, or for her asthma or sinusitis. See R. 14. The ALJ also noted Dr. Mroczek's treatment of Cruz, and that she had not seen him for several months before the hearing. See R. 14-15. Finally, the ALJ noted Dr. Balinberg's consultative examination of Cruz. See R. 15.

In considering the medical evidence combined with the medical testimony at the hearing, the ALJ agreed with Dr. Mellk's opinion that Cruz was not prevented from doing her previous work. R. 15. Specifically, he accepted the opinon of Dr. Mellk, a nephrology specialist, that

10

Cruz's "abnormal kidney findings" would "not be symptomatic." R. 15. Furthermore, as Dr. Mellk testified, Cruz "does not appear to have any clinically significant kidney disease." R. 15.

The ALJ also noted that Cruz's complaints of fatigue "are unsupported anywhere in the records," and that her asthma "is clearly extremely mild, as she herself admitted." R. 15. The ALJ stated that Cruz had not complained of back pain since 2001 and that the x-ray findings in 2001, although they suggested "the possibility of some mild scoliosis," were "almost insignificant, and there have been no abnormal clinical findings." R. 15.

The ALJ did not accept the May 2002 opinion of Dr. Lau that Cruz could not perform even sedentary work. He explained that one of Dr. Lau's reasons for making this finding was "a low back disorder," and noted that even Dr. Lau's own records contained "no proof that [Cruz] even has such a condition." R. 16. The ALJ added that Cruz walks regularly and helps care for a young child. Thus he concluded that Dr. Lau's opinion was contradicted by other doctors and unsupported by his own records. R. 16. In contrast, the ALJ accepted the testimony of Dr. Mellk that Cruz was capable of at least "light exertional activity. . . given her 'severe' combination of obesity and very mild asthma." R. 16.

Finally, the ALJ found that Cruz was not "disabled" under the regulations because, as Mr. Ramnath testified, there were many jobs locally and nationally that she could "readily perform" even if she were capable of no more than sedentary work. R. 16.

The ALJ's specific findings were as follows:

1.      The claimant applied for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act on July 3, 2002 alleging an onset date of April 17, 2002 but is not insured for benefits before July 1, 2002 and continued to be insured through September 30, 2002. She applied for Title XVI benefits on April 17, 2002.

2.      The claimant has not engaged in substantial gainful activity since the alleged onset of "disability."

3.      The claimant has a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).

4.      These medically-determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.      The claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6.      The claimant has at least the following residual functional capacity: to lift/carry 20 pounds occassionally and 10 pounds frequently, to stand/walk and/or sit for at least six hours in an eight-hour work day, and to avoid exposure to strong environmental irritants.

7.      I certify that there is sufficient evidence to support the findings as to the claimant's residual functional capacity at step five of the sequential evaluation process and that evidence is explained in the testimony of the medical expert.

8.      The claimant's past relevant work as a teacher's aide did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR §§ 404.1565 and 416.965).

9.      The claimant's medically-determinable intermittently symptomatic asthma, obesity, and non-insulin dependent diabetes mellitus do not prevent her from performing her past relevant work.

10.     If the claimant could only perform sedentary work not requiring exposure to strong environmental irritants, she would not be able to perform her past relevant work (20 CFR §§ 404.1565 and 416.965).

11.     The claimant is a "younger individual" (20 CFR §§ 404.1563 and 416.963).

12.     The claimant has "more than a high school (or high school equivalent) education" (20 CFR §§ 404.1564 and 416.964).

13.     The claimant has transferable skills from skilled work previously performed as described in the body of the decision (20 CFR §§ 404.1568 and 416.968), but the issue of transferability of work skills is not material.

14.     Although a restriction to sedentary activity would not allow the claimant to perform the full range of sedentary work, using Medical-Vocational Rule 201.29

as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform.  Examples of such jobs include: 1) surveillance system monitor: about 5000 jobs available locally and over 150,000 nationally, 2) document preparer: about 4000 locally and over 140,000 nationally, and 3) ticket checker: over 5000 locally and over 180,000 nationally.

15.  The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(e) or (f) and 416.920(e) or (f)).

R. 16-17.  The opinion of the ALJ became final when the Appeals Council denied review on

August 18, 2004.  R. 4-6.

II.  APPLICABLE LEGAL PRINCIPLES

A.  Scope of Judicial Review under 42 U.S.C. § 405(g)

A court reviewing a final decision by the Commissioner must first determine whether the

Commissioner applied the correct legal standard.  Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir.

1999).  If the correct legal standard has been applied, the court must determine whether the

decision was supported by substantial evidence.  Id.  "Substantial evidence" is "'more than a

mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol.

Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

If the reviewing court finds substantial evidence to support the Commissioner's final

decision, that decision must be upheld, even where substantial evidence supporting the

claimant's position also exists.  See generally Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir.

1990) ("Where there is substantial evidence to support either position, the determination is one

to be made by the factfinder.") (citation omitted); see also 42 U.S.C. § 405(g) ("The findings of

the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive

. . . ."); <u>Shaw v. Chater</u>, 221 F.3d 126, 131 (2d Cir. 2000) ("A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error.") (citations omitted).  The role of the reviewing court is therefore "quite limited and substantial deference is to be afforded the Commissioner's decision."  <u>Burris v. Chater</u>, 1996 WL 148345, at *3 (S.D.N.Y. Apr. 2, 1996).

      B.  <u>Standard Governing Evaluation of Disability Claims by the ALJ</u>

      The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  <u>Id.</u> § 423(d)(2)(A).

      To evaluate a Social Security claim, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience."  <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam) (citations omitted).

      Regulations issued pursuant to the Social Security Act set forth a five-step process that the Commissioner must use in evaluating a disability claim.  <u>See</u> 20 C.F.R. § 404.1520(a)(4); <u>see</u>

also Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000) (describing the five-step process).  First, in evaluating the claim, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," id. § 404.1520(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities," id. § 416.920(c).  Third, if the claimant's impairment is severe and is listed in 20 C.F.R. Part 404, Subpt. P, App. 1, or is equivalent to one of the listed impairments, the claimant must be found disabled.  Id. § 404.1520(a)(4)(iii).  Fourth, if the claimant's impairment is not listed or is not equal to one of the listed impairments, the Commissioner must review the claimant's residual functional capacity to determine if the claimant is able to do work he or she has done in the past, i.e., "past relevant work."  Id. § 404.1520(a)(4)(iv).  If the claimant is able to do such work, he or she is not disabled.  Id.  Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's residual functional capacity permits the claimant to do other work. Id. § 404.1520(a)(4)(v).  If the claimant cannot perform other work, he or she will be deemed disabled.  Id.  The Second Circuit has held that the claimant bears the burden of proof on all steps except the final one (that is, proving that there is other work the claimant can perform). Curry, 209 F.3d at 122 (citations omitted).

III.  DISCUSSION

Cruz argues that: (1) the ALJ failed to consider the cumulative effect of her obesity on the severity of her other impairments and her residual functional capacity; (2) the ALJ failed to

consider her subjective complaints of pain; (3) the ALJ failed to give controlling weight to the opinion of Dr. Lau, or to specify the reasons for that decision; and (4) the ALJ failed to develop the record fully and fairly.  See Pl. Mem. at 8-18.  Each of these arguments is addressed below.

      A.  Effect of Obesity on Other Impairments

Cruz did not raise her obesity as an impairment or limitation until she filed her brief in this case.  She contends that her Body Mass Index ("BMI") is 41, placing her in the "extreme" category of obesity, and that while the ALJ inquired about her height and weight, he "did not ask the medical expert to clarify if Ms. Cruz was obese or what effect, if any, this obesity had on the other impairments," specifically, diabetes, asthma, foot pain, back pain, and hypertension.  See Pl. Mem. at 11.  She further contends that the ALJ "made no attempt to obtain more information about her obesity from her treating physician," and that her obesity "was not addressed by the ALJ in his evaluation of disability."  Id.

Obesity is not in and of itself a disability, see Social Security Ruling ("SSR") 02-1p: "Titles II and XVI: Evaluation of Obesity," 2002 WL 31026506, 67 Fed. Reg. 57859 (Sept. 12, 2002).  However, obesity may be considered "severe" – and thus medically equal to a listed disability – if "alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities."  See 67 Fed. Reg. 57859, 57861-62.  Thus, an ALJ must consider the effects of obesity when evaluating disability.  See SSR 00-3p: "Titles II and XVI: Evaluation of Disability," 65 Fed. Reg. 31039, 31039 (May 15, 2000).

Nonetheless, there is no obligation on an ALJ to single out a claimant's obesity for discussion in all cases. As Guadalupe v. Barnhart, 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24, 2005), explained:

> An ALJ should consider whether obesity, in combination with other impairments, prevents a claimant from working. . . . Those circuits which have recently commented on this complaint have held that an ALJ's failure to explicitly address a claimant's obesity does not warrant remand. . . . When an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the Plaintiff, the claimant's obesity is understood to have been factored into their decisions.

Guadalupe, 2005 WL 2033380, at *6 (citing Rutherford v. Barnhart, 399 F.3d 546, 552-53 (3d Cir. 2005); Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004)).

Here, the ALJ made specific mention of Cruz's obesity in his findings of fact. First, he noted that Cruz's "'severe' combination of obesity and very mild asthma" did not prevent her from performing "light exertional activity." R. 16. He also found that Cruz's "obesity . . . [does] not prevent her from performing her past relevant work." See R. 17 ¶ 9. Of course, Cruz's obesity was noted by her treating physician, Dr. Lau, see R. 115. These references are sufficient to show that the ALJ considered Cruz's obesity and it was not necessary to seek additional information from Dr. Lau on this topic.

Cruz's reliance on Willoughby v. Comm'r of Social Security, 332 F. Supp. 2d 542 (W.D.N.Y. 2004), is misplaced. In Willoughby, the plaintiff had claimed morbid obesity as grounds for disability but the ALJ failed to consider the effect of that obesity on the severity of her other impairments. Id. at 549. Here, Cruz never asserted obesity as a grounds for disability and, in any event, the ALJ still considered her obesity as part of his decision.

B.  Subjective Complaints of Pain

Cruz claims that the ALJ failed to take into account "all subjective evidence of [her] condition" – specifically, her complaints of "a lot of stress," thirst, fatigue, and back pain – and that he incorrectly found her testimony regarding these complaints to be not credible.  See Pl. Mem. at 13, 14.

In determining whether a claimant is disabled, Social Security regulations require an ALJ to "consider all [a claimant's] symptoms, including pain, and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a).  The claimant's reported symptoms are not to be accepted as conclusive of the existence of a disability, but rather must be analyzed in the context of all the relevant evidence.  Id.  As the regulations state:

> Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions which you, your treating or nontreating source, or other persons report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account . . . in reaching a conclusion as to whether you are disabled. We will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating or nontreating source, and observations by our employees and other persons. . . .  We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you.

Id. § 404.1529(c)(3) & (c)(4).

In his opinion, the ALJ noted Cruz's complaints of low back pain, asthma, diabetes, fatigue, frequency of urination and thirst, the possibility of cervical cancer, and the "stress" of experiencing all of these ailments.  See R. 13, 14.  However, he also noted that the medical

records contained little to no evidence of these complaints: specifically, he found that (1) her asthma is "only intermittently symptomatic," (2) her allegations of fatigue "are unsupported anywhere in the records," and (3) she made no complaints of back pain to any physician in 2002 or 2003, there were no "supportive finding[s]" during that time, and the x-ray findings from 2001 were "almost insignificant." R. 15.[6]

Furthermore, Dr. Mellk, a nephrology specialist, testified at the hearing that blood in Cruz's urine was caused by a urinary tract infection, and that while urine testing suggested "some kidney dysfunction," Cruz did "not appear to have any clinically significant kidney disease," and finally, that these findings would not account for her kidney or back pain. R. 15, 40-42. The ALJ also took note of Dr. Balinberg's report following a physical examination of Cruz, and agreed with its conclusion that Cruz would have "some restriction in her ability to perform frequent bending, to lift, to carry, to push and to pull heavy loads, to stand up long periods of time, without interruption." R. 15, 124.

Cruz is correct in arguing that, where a claimant's subjective testimony is rejected for lack of credibility, the ALJ must do so explicitly and specifically. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (where an ALJ rejects witness testimony as not credible, it must set forth the basis for this finding "with sufficient specificity to permit intelligible plenary review of the

---

[6]In fact, the ALJ's statement that Cruz had made no complaint of back pain in 2002 and 2003 appears to be incorrect. The medical records reflect mentions of back pain to Dr. Lau in April 2002, see R. 132, and to Dr. Balinberg in May 2002, see R. 122. Also, Cruz complained of "back problems" during a gynecological exam at GDTC in December 2002, see R. 143. The ALJ's error is not of significance, however, given that other evidence in this case supports his decision. See generally Johansen v. Barnhart, 314 F.3d 283, 287-88 (7th Cir. 2002) ("though [plaintiff] is correct that the decision contains some factual errors, we find the ALJ's ultimate conclusion that [plaintiff] could perform light work to be supported by substantial evidence").

record") (citing <u>Carroll v. Sec'y of Health and Human Servs.</u>, 705 F.2d 638, 643 (2d Cir. 1983));

<u>accord</u> <u>Snell v. Apfel</u>, 177 F.3d 128, 134 (2d Cir. 1999). But that is exactly what occurred here.

In finding that Cruz's "allegations regarding her limitations are not totally credible," <u>see</u> R. 17

¶ 5, the ALJ provided a basis for this finding by discussing Cruz's complaints in the context of

the complete medical record and her own testimony regarding her daily activities. <u>See</u> R. 13-16.

Cruz nevertheless argues that the ALJ ignored her explanations that she took only Tylenol

to control her back pain because she was allergic to other medications, and that she did not go to

the emergency room for her asthma attacks because she did not have health insurance. <u>See</u> Pl.

Mem. at 14. The ALJ, however, could properly decide not to conclude that whatever pain Cruz

was experiencing rendered her unable to work in light of Cruz's testimony regarding her daily

activities (which included frequent walking). R. 15. The ALJ could also properly decide that,

notwithstanding Cruz's claim regarding her failure to go to the emergency room, the medical

evidence in the record supported a finding that her asthma was "very mild" and "rather

asymptomatic." R. 16. Furthermore, at a doctor's visit on February 9, 2002, Dr. Lau noted that

Cruz's asthma was "ok." R. 130.[7]

In sum, while Cruz testified that the combination of lower back pain, asthma, and diabetes

left her "stressed out," R. 30, and therefore unable to work, the ALJ could properly discount

Cruz's assertion regarding her inability to work based on the other evidence in the record.

---

[7]In a handwritten note dated April 13, 2002, and addressed "To Whom It May Concern,"
Dr. Lau wrote that Cruz's "back pain and asthma have markedly limited her ability to ambulate
or other physical activities." R. 114. For reasons discussed in the next section, the ALJ was
entitled not to accept this opinion.

C.  Application of the Treating Physician Rule With Regard to Dr. Lau

        In determining whether a claimant is disabled, a treating physician's opinion is entitled to

controlling weight if it is "well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence."  20 C.F.R.

§ 404.1527(d)(2).  Under this rule, the Commissioner is not required to give deference to the

treating physician's opinion where the treating physician "issued opinions that are not consistent

with other substantial evidence in the record, such as the opinions of other medical experts."

Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004).  Moreover, "the less consistent that [a

treating physician's] opinion is with the record as a whole, the less weight it will be given."

Snell, 177 F.3d at 133.  "Genuine conflicts in the medical evidence are for the Commissioner to

resolve."  Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002).

        "An ALJ who refuses to accord controlling weight to the medical opinion of a treating

physician must consider various 'factors' to determine how much weight to give to the opinion.

. . .  Among those factors are: (i) the frequency of examination and the length, nature and extent

of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii)

the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a

specialist; and (v) other factors brought to the Social Security Administration's attention that

tend to support or contradict the opinion."  Halloran, 362 F.3d at 32 (citing 20 C.F.R.

§ 404.1527(d)(2)); accord Shaw, 221 F.3d at 134.  The "[f]ailure to provide 'good reasons' for

not crediting the opinion of a claimant's treating physician is a ground for remand."  Snell, 177

F.3d at 133 (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)).

Cruz argues that the ALJ failed to properly apply the treating physician rule. Specifically, she contends that the ALJ relied only on the opinion of Dr. Mellk, the medical expert at the hearing, and disregarded the opinions of Dr. Lau, Dr. Balinberg, and Dr. Mroczek, in the last instance "because Ms. Cruz stopped seeing Dr. Mroczek several months before the application." Pl. Mem. at 15. In general, she claims, the ALJ gave "less weight" to the opinions of her treating physicians, Dr. Lau and Dr. Mroczek, and failed to specify his reasons for doing so. See Pl. Mem. at 16.

The ALJ did not discount the medical opinion of Dr. Mroczek, however. Cruz visited Dr. Mroczek only on a single occasion for her heel spur in 2001. R. 120. Dr. Mroczek wrote a report prescribing physical therapy and other devices for Cruz's treatment and told Cruz to return if her symptoms lasted for two to three months. R. 75, 120. She apparently never did so. Dr. Mroczek gave no opinion that Cruz suffered from limitations that rendered her unable to work. The ALJ's decision was thus completely consistent with Dr. Mroczek's report.

Dr. Lau, by contrast, wrote a note regarding Cruz's limitations and filled out a form provided by the social security office. The note states in its entirety as follows:

To Whom It May Concern:

Ms. Milagros Cruz has multiple chronic medical conditions, including diabetes; asthma; chronic sinusitis; chronic lower back pain and feet pain. Her back pain and asthma have markedly limited her ability to ambulate or other physical activities [sic]. At present she does not feel well for daily work.

Best Regards,

On Hin Lau, M.D.

R.114.  The form filled out by Dr. Lau indicates that Cruz suffers from lower back pain; that she can lift and carry only 5 pounds; that she can stand up to 2 hours per day; and that she can sit for less than 6 hours per day.  R. 116-18.

The ALJ refused to accord controlling weight to certain of the medical opinions of Dr. Lau because the ALJ found those opinions to be contradicted by Dr. Lau's own records.  See R. 16.  The ALJ noted that "there is no proof that [Cruz] even has [lower back pain] . . . , let alone that she has actively complained about it since filing her claim."  R. 16.  The ALJ also noted that "Dr. Lau's records do not show [Cruz's] complaining of – or being treated for – any back condition during the last several months he saw" her.  R. 14.  While the record actually contains scattered references to complaints of back pain, see footnote 6 above, Cruz's medical records, including physical exams and other diagnostic tests, confirm the lack of evidence of any treatments for lower back pain after her initial visits to Dr. Lau in late 2001 and early 2002.  R. 109-10, 143-74.  The ALJ also noted that Dr. Lau had x-rays taken of Cruz's back in late November 2001, but that they revealed "nothing other than some muscle spasm," as well as "the possibility of some mild scoliosis," see R. 14, 15, and that Cruz's "other conditions would not even be expected to impose substantial physical restrictions on her."  R. 16.  Dr. Lau's statement that Cruz "does not feel well for daily work," R. 114, was particularly unhelpful as it appears to constitute simply a self-report from Cruz – or at best a conclusory statement from Dr. Lau that Cruz was unable to work.  Cf. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); Williams v. Comm'r of Social Sec., 2006 WL 850973, at *6 (W.D.N.Y.

Apr. 3, 2006) (statement that a claimant "is disabled" is not considered a "medical opinion" under the treating physician rule).

With respect to Dr. Balinberg, he found only that Cruz had "some restriction" in her ability to bend frequently, lift, carry, push and pull heavy loads, and stand for long periods. R. 124. Thus, no evidence provided by other doctors supported Dr. Lau's conclusion that Cruz was unable to work. Notably, the ALJ observed that a finding of incapacity was inconsistent with Cruz's own conduct, which included "a lot of walking" – see R. 14 (Cruz "walks for twenty minutes to church each Sunday, for services lasting 2½ hours" and she "walks for exercise") – as well as "the care of a toddler" in her home. R. 16.

The ALJ accepted the opinion of Dr. Mellk, the medical expert at the hearing, with regard to the nature of Cruz's impairments. R. 15. Dr. Mellk had reviewed Cruz's medical records and testified that she was capable of "certainly light [work] and possibly even . . . medium." R. 42. The opinion of a non-examining medical expert can serve as substantial evidence and override the opinion of a treating physician pursuant to the treating physician regulations. See 20 C.F.R. § 404.1527(f)(2); see also Schisler, 3 F.3d at 568.

Here, as noted above, the ALJ determined that certain opinions of Cruz's treating physician, Dr. Lau, were contradicted by other evidence in the record and were not supported by his own records. R. 16. In contrast, the ALJ found that the opinions of Dr. Mellk were supported by the evidence in the record, and thus constituted substantial evidence that Cruz's impairments did not prevent her from working. R. 15. In particular, the ALJ found that Dr. Mellk's opinion regarding Cruz's "recent abnormal kidney findings" was controlling, since he was a nephrology specialist, and since his opinion was consistent with other evidence in the

record, such as a normal blood creatinine level (indicating normal renal function).  R. 15.  Dr.

Mellk's opinion that Cruz's asthma was "intermittent" was supported by Cruz's own testimony

that she had experienced only two attacks in the previous eight months.  R. 36, 42.  Finally, the

ALJ noted Dr. Mellk's opinion that Cruz had "no medical condition that would be expected to

prevent her from doing her previous types of work as she described them."  R. 15.  This opinion

was consistent with Cruz's testimony about her daily activities, which included regular walking,

helping her mother shop, and helping to care for her sister's baby.  See R. 14.

Finally, the ALJ adequately explained his reasons for not accepting Dr. Lau's opinion.

While he did not explicitly consider each of the factors in 20 C.F.R. § 404.1527(d)(2), such a

failure does not require remand where the ALJ's decision provides a basis for determining that

these factors are present.  See Hill v. Barnhart, 410 F. Supp. 2d 195, 217-18 (S.D.N.Y. 2006)

(ALJ decision sufficient to show "good reasons" even though it did not "strictly track the

regulation"); see also Halloran, 362 F.3d at 32 (analyzing ALJ decision to determine whether

"good reasons" were reflected therein).  Here, the length of the treatment relationship was

minimal inasmuch as Cruz saw Dr. Lau on only five occasions over a five-month period prior to

the filing of her application.  R. 130-32.  The ALJ explicitly considered the evidence in support

of the treating physician's opinion, noting that there was no proof that Cruz had a lower back

disorder.  R. 16.  He also noted the lack of consistency between Dr. Lau's opinion and the record

as a whole.  R. 16.  Nothing in the record suggests that Dr. Lau was a specialist of any kind.  See

R. 130-32 (consisting of a medical record in which Dr. Lau refers Cruz to various specialists).

Because the ALJ explained why he was not according controlling weight to Dr. Lau's opinion,

but rather to the supported opinions of Dr. Mellk, the ALJ's decision not to rely on Dr. Lau's opinions was proper. See Schisler, 3 F.3d at 568.

In sum, the ALJ could properly find that substantial evidence in the record was inconsistent with Dr. Lau's opinion that Cruz was incapable of even sedentary work. Accordingly, the ALJ did not err in declining to accord controlling weight to that opinion.

D. Development of the Administrative Record

An ALJ bears an affirmative duty to develop the administrative record. See, e.g., Tejada, 167 F.3d at 774. The non-adversarial nature of Social Security proceedings requires the ALJ "to investigate the facts and develop the arguments both for and against granting benefits." Sims v. Apfel, 530 U.S. 103, 111 (2000). The duty to develop the record obligates ALJ's to make "every reasonable effort to help [a claimant] get medical reports from [his or her] own medical sources." See 20 C.F.R. §§ 404.1512(d), 416.912(d). When the claimant appears pro se, as was the case here, the ALJ has a heightened duty to develop the administrative record prior to making a determination. See Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990). If an ALJ fails to assist a litigant in developing the record, remand for a new hearing is appropriate. See Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999).

Cruz argues that the ALJ failed to develop and evaluate the medical evidence as required by law. Specifically, she argues that: (1) the ALJ failed to obtain relevant records from NYU Medical Center after his first two attempts were unsuccessful; (2) the ALJ did not attempt to develop the record of her obesity or inquire about it during the hearing; (3) the ALJ did not inquire as to why Cruz failed to follow up with Dr. Mroczek regarding her foot pain; (4) following Dr. Balinberg's diagnosis of a "spinal disorder," the ALJ did not recontact Cruz's

treating physician in order to clarify the disorder's connection with her back pain; and (5) the ALJ failed to develop Cruz's complete medical history for at least 12 months prior to the date of her application.  See Pl. Mem. 17-18.

With respect to the NYU records, Cruz identified NYU Downtown Hospital's OB/GYN Clinic as a treating source from April 19, 2000, to March 22, 2002.  See R. 77.  The ALJ made two attempts to obtain records from this source.  See R. 69.  These two attempts were sufficient under the regulations, see 20 C.F.R. § 404.1512(d)(1), which provide that only two requests need be made for medical records and that the issuance of a subpoena is not mandatory, see Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998) (the decision to issue a subpoena is "within the sound discretion of the ALJ").  Significantly, Cruz at no time suggested that she was disabled by a gynecological condition, but stated only that she was "being evaluated" for possible cervical cancer.  See R. 73, 77.  Since further testing revealed that Cruz did not, in fact, have cervical cancer, see R. 145, there is no alleged disability for which records would need to be obtained.

With regard to Cruz's obesity, Cruz did not list obesity as an impairment in her application for benefits.  As already discussed, see Section III.A. above, the ALJ does not have an obligation to single out a claimant's obesity in rendering a decision.  There is no reason why the presence of obesity should by itself create a special duty to develop the record.  The medical testimony and evidence before the agency – which included repeated references to Cruz's height and weight – were sufficient to enable the ALJ to be assured that Cruz's obesity had been considered by the medical sources.

Nor did the ALJ have any obligation to seek additional follow-up information from Dr. Mroczek.  Dr. Mroczek prescribed physical therapy and heel cups, and gave Cruz a prescription

for a night splint to use if her symptoms continued more than six weeks.  See R. 120.  Dr. Mellk too noted that Cruz had "plantar fasciitis," also known as "heel spur," which the ALJ noted in his ruling.  R. 41, 15.  Dr. Mroczek told Cruz to return if her symptoms lasted for two to three months, see R. 120, but she never did so – a fact noted by the ALJ, see R. 14-15.  In light of this medical evidence, the ALJ was not obligated to obtain any additional information on this score.

Cruz argues, see Pl. Mem. at 17-18, that the ALJ should have re-contacted Dr. Lau regarding Dr. Balinberg's diagnosis of a "spinal disorder," see R. 123, to "clarify its connection with the back pain."  The "spinal disorder," however, was plainly a reference to an x-ray that revealed a "shallow dextro curvature" of the lumbosacral spine.  R. 122.  Dr. Lau himself had been provided an x-ray report – presumably the same one reviewed by Dr. Balinberg – revealing a "shallow dextrocurvature" of the lumbosacral spine.  R. 113.  Obviously there would have been no reason to contact Dr. Lau to provide him with information that he already had.  Notably, Dr. Mellk viewed Cruz as having "a very slight dextro-scoliosis."  See R. 40.

Finally, Cruz asserts that the ALJ failed to meet his obligation that an ALJ make every reasonable effort to fully develop a claimant's medical history for a 12-month period.  See 20 C.F.R. § 416.912(d).  Cruz alleges that because she filed for benefits on April 19, 2002, the ALJ was required to seek records starting from April 19, 2001, but that he in fact only sought records dated after October 5, 2001.  See Pl. Mem. at 18.  In fact, there was no failure on this point since Cruz identified no treating source between April 19, 2001, and October 5, 2001, other than her visits to the NYU Downtown Hospital's OB/GYN Clinic.  See R. 77.

## Conclusion

For the foregoing reasons, Cruz's motion for judgment on the pleadings is denied and the Commissioner's motion for judgment on the pleadings is granted. The Clerk is requested to enter judgment.


SO ORDERED.

Dated: May 8, 2006
       New York, New York


_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies to:

James P. Barton
Disability Advocacy Project
LSNY/Manhattan
90 John Street, Suite 301
New York, New York 10038

Susan C. Branagan
Special Assistant United States Attorney
86 Chambers Street, 3rd floor
New York, New York 10007

## Conclusion

For the foregoing reasons, Cruz's motion for judgment on the pleadings is denied and the Commissioner's motion for judgment on the pleadings is granted. The Clerk is requested to enter judgment.

SO ORDERED.

Dated: May 8, 2006
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies to:

James P. Barton
Disability Advocacy Project
LSNY/Manhattan
90 John Street, Suite 301
New York, New York 10038

Susan C. Branagan
Special Assistant United States Attorney
86 Chambers Street, 3rd floor
New York, New York 10007